NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1384
_____

KEITH A. WILLIAMS

v.

JOSEPH SMITH, Individually;
LT. EDINGER, Individually;
LT. GABRIELSON, Individually;
TWO CORRECTION OFFICERS, Individually;
MR. MURRAY

Joseph Smith, Ken Gabrielson, Matt Edinger and Jason Murray,
Appellants
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-07-cv-01382)
District Judge:  Honorable Christopher C. Conner
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 14, 2012

Before:  SCIRICA, FISHER and JORDAN, *Circuit Judges*.

(Filed: December 21, 2012)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Appellants are prison employees accused of violating Keith A. Williams's Eighth Amendment rights by failing to protect him from violence at the hands of other prisoners. The prison officials appeal from the District Court's denial of their motion for summary judgment on qualified immunity grounds. Before reaching the merits of that question, we first consider whether we have jurisdiction over this appeal. The District Court denied the prison officials' motion for summary judgment on qualified immunity grounds because it concluded that there were remaining issues of material fact to be decided. Because the appeal ultimately asks us to consider whether the District Court was in error about which facts were genuinely at issue – rather than a question of law – we cannot hear this case under the collateral order doctrine. We will therefore dismiss this appeal for want of jurisdiction.

## I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Williams brought suit under 42 U.S.C. § 1983 alleging that prison staff members Matthew Edinger, Kenneth Gabrielson, and Jason Murray, as well as Warden Joseph Smith, violated his constitutional rights when they failed to protect him from attacks by fellow inmates at the United States Penitentiary in Lewisburg, Pennsylvania. Williams

2

believes that these attacks stemmed from pervasive prison violence involving New York- and Washington, D.C.-affiliated gangs. In 2005, a member of the D.C. gang attacked Williams. As a result, Williams was moved to a special housing unit. Williams sent a form to Gabrielson, who controlled housing assignments in the special unit, requesting an individual cell because he feared for his life due to gang activity.

Ten days later, Williams was attacked by two other gang members. They assaulted Williams in an outdoor recreation cage after he allegedly called them names. A guard stopped the attack. Edinger, a gang specialist, then escorted Williams to get medical care. Williams believed he was attacked because the assailants were gang members. The attackers told prison officials that the assault was the result of personal animosity. The prison then permanently separated Williams from the assailants.

Williams later told Gabrielson that he feared additional gang-related retaliation and assault; Gabrielson responded that Williams was being "paranoid." Williams also contacted his attorney with his concerns, and the attorney informed Warden Smith of Williams's fears by mail. Smith does not recall receiving the letter and took no action based on the information.

Williams was then housed with Robert Fulton, a member of a New York gang with a history of violence. Fulton attacked Williams inside their shared cell. When Murray went to Williams's cell to distribute breakfast, he heard the sound of a scuffle and saw Fulton placing Williams in a headlock and cutting Williams's face with a blade.

Murray ordered immediate separation and radioed for backup. While Murray waited for other guards to arrive, the attack continued for ten to fifteen seconds. When backup reached his location, Murray entered the cell and took Williams to an urgent care room for treatment. Williams states that Murray warned him not to "snitch" about the incident. Gabrielson believed that the incident was part of a gang initiation ritual. Williams denied that he was being initiated into any gang.

Williams filed this action in the District Court for the Middle District of Pennsylvania, alleging that Edinger, Murray, Gabrielson, and Warden Smith violated his Eighth Amendment right to be free from cruel and unusual punishment. The prison officials moved for summary judgment, asserting qualified immunity. The District Court denied the motion, and this appeal followed.

## II.

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Williams contests this Court's appellate jurisdiction pursuant to 28 U.S.C. § 1291 over the denial of summary judgment, arguing that the District Court's order is not final within the meaning of § 1291 because the District Court found that genuine issues of material fact needed to be resolved before it could determine whether qualified immunity was available. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995).

III.

Appellants ask this Court to end the case against them by concluding that they are entitled to qualified immunity.  Before reaching that issue, we must first determine whether we have jurisdiction to hear this appeal.  We generally have appellate jurisdiction under 28 U.S.C. § 1291 only over final orders.  *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) ("So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal.").  We hear interlocutory appeals, such as appeals from denials of summary judgment, only when those decisions would "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."  *Id.* Thus, we consider appeals of collateral orders only when those orders would "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment."  *Eddy v. V.I. Water & Power Auth.*, 256 F.3d 204, 208 (3d Cir. 2001).

"To the extent that they turn on an issue of law, decisions denying public officials qualified immunity are considered final under the collateral order doctrine. . ."  *Grant v. City of Pittsburgh*, 98 F.3d 116, 119-20 (3d Cir. 1996).  Government officials would lose this immunity from suit if courts allowed cases to proceed to trial erroneously.  *Mitchell*

5

*v. Forsyth*, 472 U.S. 511, 526 (1985). The rationale for qualified immunity favors early resolution, as post-trial review fails to offer protection from suit – not just liability. *Johnson*, 515 U.S. at 312. But vindication of this policy cannot require appellate courts to hear cases based on under-developed records or to usurp the factfinder's responsibility for making credibility determinations. *See id*. at 316. Therefore, our jurisdiction here depends on whether the question of qualified immunity before us is purely legal or turns on the resolution of outstanding factual issues.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1981) (internal quotation marks omitted). In determining whether an official is entitled to qualified immunity, we must answer two questions: (1) whether the facts make out a violation of a constitutional right and (2) whether the right was clearly established at the time of the defendants' conduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

In order for a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The District Court found – and the prison officials do not dispute – that the right to be protected

against violence inflicted by other inmates is clearly established. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

The qualified immunity inquiry focuses, then, on whether the employees' conduct constituted a violation. To establish an Eighth Amendment failure-to-protect claim, Williams must demonstrate (1) that he was "incarcerated under conditions posing a substantial risk of serious harm" and (2) that each prison official acted with the "sufficiently culpable state of mind" of "deliberate indifference to [his] safety." *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In assessing this question on summary judgment, all inferences should be drawn in the light most favorable to the non-moving party. *Barton v. Curtis*, 497 F.3d 331, 334 (3d Cir. 2007).

The District Court concluded that "the record demonstrates that there are issues of material fact with regard to the claim of whether defendants failed to protect Williams from members of the D.C. gangs and N.Y. gangs which preclude the entry of summary judgment." Granting Williams the inferences to which he is entitled, it is clear that many outstanding questions about the states of mind of the prison officials remain to be resolved through the fact-finding process, where the trial court will weigh and determine the credibility of the conflicting direct and circumstantial evidence the parties have presented. Therefore, because "[w]e have no jurisdiction . . . in an interlocutory appeal to review a District Court's determination that there is sufficient record evidence to support

7

a set of facts under which there would be no immunity," we will dismiss this appeal.

*Schieber v. City of Phila.*, 320 F.3d 409, 415 (3d Cir. 2003).

IV.

For the foregoing reasons, we will dismiss this appeal for lack of jurisdiction.